IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY CHARLES HARE, | No. CIV S-06-2758-GEB-CMK-P |
| Petitioner, | |
| vs. | |
| THOMAS CAREY, et al., | |
| Respondents. | |
| _____/ | |
| DANNY CHARLES HARE, | No. CIV S-06-2759-FCD-DAD-P |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| THOMAS CAREY, et al., | |
| Respondents. | |
| _____/ | |

      Petitioner, a state prisoner proceeding with appointed counsel, brings these petitions for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  These two cases have been related for all purposes.  Pending before the court are Petitioner's petitions for writ of habeas corpus (Docs. 1; 1), Supplemental briefs (Docs. 20; 14), Respondent's answers (Docs. 24; 15),

and Petitioner's traverses (Docs. 27; 16).

## I. BACKGROUND

Petitioner pleaded guilty to second degree murder and was sentenced on January 25, 1985, to a term of 15 years to life, plus two years for use of a weapon.  He had his initial parole consideration hearing in 1991.  Since then, he has had eight subsequent parole consideration hearings (1993, 1995, 1997, 1999, 2002, 2003, 2005, and 2007).  Petitioner was denied a parole date at each of these hearings.  On April 4, 2005, the Board of Prison Terms ("Board") denied Petitioner a parole release date for two years.[1]  The 2005 parole denial is the subject of the current petition.   Petitioner then appeared before the Board in 2007, and was again denied a parole date for another year.

In it's 2005 decision, the Board denied Petitioner parole for two years citing the following reasons: (1) the facts of Petitioner's commitment offense; (2) Petitioner's escalating pattern of criminal activity, centered around drugs; (3) Petitioner's prison disciplinaries (recent 115); and (4) Petitioner's parole plans.  Petitioner was commended for his education, vocational activity, and self-help programing.  However, the Board found that those positive factors did not outweigh the factors of unsuitability.  Specifically, the Board noted:

> the crime was carried out in an especially cruel and callous manner.  You basically entered into a drug deal with the victim and you shot and killed him and you took him out and you buried [him] in the desert, the bottom line.  And then after you were arrested and while you were on - - you were able to make bail, you took off to Washington State and tried to forger your life until you were turned in.  The offense was carried out in a dispassionate and calculated manner and it appears from reading the facts that it was calculated.  The offense was carried out in a manner that demonstrates an exceptionally callous disregard for another human being.  To shoot an individual over drugs, cocaine, surely that shows a callous disregard for human life.  The motive for the crime was inexplicable.  Anytime there's a killing or shooting over drugs that's inexplicable behavior and it's very trivial.  That's a trivial way for someone to lose their life over something as trivial as drugs. . . . That recent 115, serious 115, for weapons stock in

---

[1] The Board is now known as the California Board of Parole Hearings.

> prison certainly had - - weighed heavy on the Board. The recent psychological evaluation shows that the prisoner is making progress, seems that he's keeping on the right track. The prisoner has not completed the necessary programming which is essential to his adjustment and needs additional time. The Panel recommends that the prisoner continue to participate in positive kinds of programs. And first of all you need to become disciplinary free and remain disciplinary free and not even a 128(a) write-up. . . ."

(Board Decision at 5-7 (Answer, Doc. 24, Ex. 2, at 75-77)).

Petitioner filed a petition for a writ of habeas corpus in the Los Angeles County Superior Court challenging the 2005 denial of parole. In a decision denying the petition, the state court found there was "some evidence" that Petitioner was unsuitable for parole, stating

> An inmate may be unsuitable for parole if the motive for the life crime was "inexplicable or very trivial." Here, petitioner explained he shot the victim over money and drugs. Thus, the motive is not inexplicable. A motive is "very trivial" when it is materially less significant than other reasons that conventionally drive people to commit second-degree murder. While killing over money may not be "very trivial," killing for drugs is a materially less significant reason than others that drive people to commit murder. As such, there is "some evidence" that motive was "very trivial." An inmate may also be unsuitable for parole if the crime was carried out in a "calculated" manner. The fact that petitioner shot the victim for money and drugs, muffled the shots, and secreted the body, is "some evidence" the crime was carried out in a calculated manner.
>
> . . .
>
> An inmate may be unsuitable for parole if he has engaged in "serious misconduct" during his incarceration. The record reflects petitioner has received three 115 disciplinary violations during his incarceration. The most recent was in 2002 for possession of dangerous contraband. Thus, there is "some evidence" he is unsuitable because of institutional misconduct.

(Answer, Doc. 24, Exhibit 5).[2]

///

---

[2] The State Court found other reasoning by the Board did not support a finding of unsuitability. Specifically, the State Court stated that there was no evidence petitioner was unsuitable based on his prior criminal history (non-violent drug related offenses), or social history due to prior drug use. (Answer, Doc. 24, Exhibit 5).

3

Subsequent habeas petitions challenging the denial of parole were denied by the California Court of Appeal, with a citation to In re Rosenkrantz, 29 Cal.4th 616, 667 (2002) and In re Dannenberg, 34 Cal.4th 1061 (2005), and the California Supreme Court, without comment or citation. Respondent concedes that Petitioner's claims are exhausted.[3]

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state

---

[3] As addressed below, however, Respondent does not concede that all of Petitioner's claims regarding whether the State has breached his plea agreement have been exhausted.

4

court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, under § 2254(d), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412) . "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state

5

court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See Wiggins v. Smith, 539 U.S. 510, 520 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 538 U.S. at 75-76. This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless

unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).  Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982.  The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III.  DISCUSSION

In his first petition, Petitioner contends that the Board's decision was erroneous, and violated his due process rights, because there was no evidence supporting the decision that he is unsuitable for parole, that he meets all of the parole suitability criteria and none of the parole unsuitability criteria, the Board re-characterized his commitment offense, failed to follow controlling legal principles, and relied solely on his commitment offense to deny him parole.

In his second petition, he contends the State of California has breached its plea agreement contract by keeping him imprisoned without just cause many years beyond his bargained-for sentence.  He is requesting the court either require the State to perform its part of the contract or allow him to withdraw his plea.

**A.  Denial of Parole**

1. Applicable Law

In Sass v. Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006), the Ninth Circuit held that California's parole statute does, in fact, create a federally cognizable liberty interest. See id. at 1127-28.  On the merits, the court also rejected the argument that the "some evidence" standard does not apply in the parole context.  See id. at 1128-29.  Under Superintendent v. Hill, 472 U.S. 445, 455 (1985), due process requires that a prison disciplinary hearing decision be

1  based on "some evidence" in the record as a whole which supports the decision.  This standard,

2  which the court has also applied in the parole context, is not particularly stringent and is satisfied

3  where "there is any evidence in the record that could support the conclusion reached." Id. at 455-

4  56.  Additionally, this standard requires that the evidence underlying the Board's decision must

5  have some indicia of reliability.  See Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003).

6            In Sass, the Ninth Circuit also addressed the argument that the requirement of

7  "some evidence" in the parole context has not been clearly established by the Supreme Court.

8  The Ninth Circuit held:

> Hill's some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary." (citation omitted). Hill held that although this standard might be insufficient in other circumstances, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." (citation omitted).  To hold that less than the some evidence standard is required would violate clearly established federal law because it would mean that a state could interfere with a liberty interest – that in parole – without support or in an otherwise arbitrary manner.  We therefore reject the state's contention that the some evidence standard is not clearly established in the parole context.

16  Sass, 461 F.3d at 1129.  Because Sass and Biggs are binding precedent, this court must also

17  conclude the "some evidence" standard is clearly established law for purposes of habeas corpus

18  relief under AEDPA.[4]  Therefore, this court will apply the "some evidence" standard on the

19  merits.  See id.; see also Irons v. Carey, 505 F.3946, 851 (9th Cir. 2007).

20  / / /

---

[4] The court is aware of the Ninth Circuit's holding in Hayward v. Marshall, 512 F.3d 536 (9th Cir. 2008), rehearing en banc granted, 527 F.3d 797 (9th Cir. 2008), where the court applied the "some evidence" standard as clearly established law and concluded that habeas relief was granted because the continued reliance on immutable factors violated due process.  However, that case is not binding precedent pending issuance of the mandate.  See Hayward, 527 F.3d 797 ("The three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit").  Among the issues being considered on rehearing is whether there is any clearly established law in the parole context.  If the Ninth Circuit ultimately concludes that there is no clearly established law, habeas relief would be unavailable.  See Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 128 S.Ct. 743, 746 (2008)).

In assessing whether the "some evidence" standard has been met, the analysis is framed by the state's statutes and regulations governing parole suitability. See Biggs, 334 F.3d at 915. Thus, this court looks to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole and then reviews the record to determine whether there is "some evidence" supporting the decision to deny parole. Under California Penal Code § 3041(b) and California Code of Regulations, Title 15, § 2402(a), once the inmate has served the minimum term required, a release date shall be set unless release currently poses an unreasonable risk of danger to society.[5] It follows from this that, even though there may be some evidence that a particular unsuitability factor exists, this does not necessarily mean that there is some evidence of a current unreasonable risk of danger to the community if the inmate is released.[6]

In addition to concluding that due process requires "some evidence" in the parole context based on Hill, the Ninth Circuit has addressed whether the continued reliance on immutable factors satisfies this standard and whether continued reliance solely on such factors ignores the goal of rehabilitation and violates due process. In Biggs, where the petitioner was challenging the first denial of parole based solely on the facts of the commitment offense, the Ninth Circuit concluded that the denial was based on some evidence – the facts of the

---

[5] The regulations set forth various circumstances which tend to show suitability and others which tend to show unsuitability. See Cal. Code Regs., tit 15 § 2402(c)-(d). Under § 2402(c), circumstances tending to show unsuitability include: (1) the facts of the commitment offense, where the offense was committed in an especially heinous, atrocious, or cruel manner; (2) the prisoner's previous record of violence; (3) a history of unstable relationships with others; (4) commission of sadistic sexual offenses; (5) a lengthy history of severe mental problems related to the offense; and (6) serious misconduct while in prison. Circumstances tending to show suitability include: (1) lack of a juvenile record; (2) reasonably stable relationships with others; (3) the prisoner has shown remorse; (4) lack of significant history of violent crimes; (5) realistic plans for release; and (6) participation in institutional activities indicating an enhanced ability to function within the law upon release. See Cal. Code Regs., tit. 15 § 2402(d).

[6] The California Supreme Court has held that, under the regulations, the denial of parole may be predicated on the commitment offense only where the Board can point to factors beyond the minimum elements of the crime that demonstrate that, at the time of the suitability hearing, the inmate will present an unreasonable risk of danger to society if released. See In re Dannenberg, 34 Cal.4th 1061, 1071 (2005).

commitment offense – even though other findings made by the Board in Biggs' case lacked evidentiary support. In dicta, however, the court acknowledged that, sometime in the future, the continued reliance on immutable factors could violate due process. See Biggs, 334 F.3d at 917. From this, it is clear that the Board may rely solely on immutable factors for the first denial of parole given the minimal passage of time between the commitment offense and parole decision.

As to subsequent denials of parole and the continued reliance on immutable factors, the Ninth Circuit has not drawn any bright line. In Sass, where the petitioner was challenging the third denial of parole, the Ninth Circuit affirmed the denial of the habeas petition. See Sass, 461 F.3d at 1129. The court did not conclude that reliance on immutable factors (the facts of the commitment offense and the petitioner's prior criminal history) – even for a third time – violated due process. See id. The court held:

> In making a judgment call based on evidence of pre-conviction recidivism and the nature of the conviction offense, the Board cannot be categorized as acting arbitrarily. Here, the Board based its finding that Sass was unsuitable for parole on the gravity of his convicted offenses in combination with his prior offenses. These elements amount to some evidence. . . . Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.

Id.

In Irons v. Carey, 505 F.3d 846 (9th Cir. 2007), rehearing en banc denied, 505 F.3d 951 (9th Cir. 2007), the Ninth Circuit reversed the district court's grant of a habeas petition challenging the eighth denial of parole, concluding that the facts of the petitioner's commitment offense alone constituted some evidence of unsuitability under California law. The court in Irons noted that none of the Ninth Circuit's cases regarding reliance solely on immutable factors to deny parole involved inmates who had served the minimum terms of their sentences. Specifically, the court observed:

> We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision

was made before the inmate had served the minimum number of years required by his sentence. Specifically, in Biggs, Sass, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. Biggs, 334 F.3d at 912; Sass, 461 F.3d at 1125. All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

Id. at 853-54. As to the continued reliance solely on immutable factors, the court noted in dicta:

> Furthermore, we note that in Sass and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes.

Id. at 854.

From Biggs, Sass, and Irons the court can conclude that, where the challenged parole denial occurs before the petitioner has served the minimum term of his sentence, the continued reliance solely on immutable factors to deny parole for up to eight times does not violate due process. It may be that, so long as the inmate has not served his minimum sentence, the Board may deny parole any number of times based solely on immutable factors.[7] Where the inmate has served the minimum term, the following rules apply: (1) California law creates a liberty interest in parole for prisoners who have served the minimum sentence, see Sass, 461 F.3d at 1127-28; Irons, 505 F.3d at 853-54; (2) the Board's decision to deny parole must be supported by "some evidence" that the prisoner's release would have posed an unreasonable risk of danger to the community at the time, see Sass, 461 F.3d at 1128-29; and (3) the evidence relied upon by

---

[7]     Such a reading of the cases would be consistent with California law, which does not require that a parole release date even be considered until the inmate has served the minimum term of his sentence. See Cal. Penal Code § 3041(b) and Cal. Code of Regs., Title 15, § 2402(a).

the Board must have some indicia of reliability, see Biggs, 334 F.3d at 915.  In some cases where the minimum term has been served, the continued reliance on immutable factors to deny parole may violate due process.  See id. at 917; see also Irons, 505 F.3d at 854.

    2.    <u>Analysis</u>

Based on the principles discussed above, the question for this court is whether the state court's determination that the Board's decision was based on "some evidence" of a risk of danger to the community in 2005 is an unreasonable application of this standard.

Initially, the court observes that this case does not present the situation of reliance solely on immutable factors, as Petitioner argues.  The Board stated several reasons in support of the decision not to grant Petitioner a parole date, including the facts of the offense, his escalating pattern of conduct, his prison disciplinary record, and his parole plans.  While the State Court found some of these reasons to be unsupportive of the decision, it upheld the Board's decision as based on "some evidence" including the facts of the offense and Petitioner's institutional misconduct.  This court must also find that these reasons bear some indicia of reliability.

First, the Board reviewed the facts of Petitioner's commitment offense.  Petitioner contends the Board violated his due process rights by mis-characterizing his commitment offense to fit a first-degree murder charge instead of the second-degree murder he was convicted of.  Reading the transcript of the proceedings, the undersigned finds that the Board evaluated the facts of the crime for which Petitioner plead guilty.  The Board never specifically characterized the offense as first- or second-degree murder, but rather discussed the specific facts thereof.  The undersigned notes that Petitioner accepted a plea bargain and pleaded guilty to second-degree murder.  However, that does not change the facts of the crime.  As the Board discussed, and Petitioner acknowledged at the hearing, Petitioner shot his victim during a drug transaction, "[f]or the money [and] for the cocaine too."  (Hearing Tr. at 14, Answer, Doc. 24, Exhibit 2).  The Board found the offense was carried out in a cruel, callous, and calculated manner, in that Petitioner shot his victim, then took him to the desert and buried him.  The facts of the crime,

regardless of how they were or were not characterized, supports the Board's determination that the offense was carried out in a cruel manner, and supports the Board's determination that Petitioner was unsuitable for parole.

The facts of Petitioner's commitment offense was not the only reasoning the Board relied on for its decision. The Board also reviewed Petitioner's prison disciplinary proceedings. The Board found that during Petitioner's incarceration, he has received three Rule Violation Reports, "CDC 115's", the last one on October 10, 2002.[8] Petitioner argues these 115's were not serious and do not indicate any tendency toward violence. However, his latest 115, he acknowledges, was for possession of dangerous contraband. While he argues a modified toothbrush is not a dangerous weapon, it was construed as such and resulted in the disciplinary violation.[9] While it is not for the undersigned to determine, it is conceivable that a toothbrush can be modified in such a manner as to render it a dangerous weapon, such as where it is fitted to accept a razorblade or similar tool turning it into a shank. The Board specifically stated that this 115 weighed heavy, as dangerous contraband in prison is a problem in prison. The Board's reliance on Petitioner's disciplinary history certainly bears an indicia of reliability.

The Board acknowledged Petitioner had made good progress based on his psychological evaluations, but noted that while the evaluation stated Petitioner's level of dangerousness is low, that opinion was based on Petitioner's ability to remain drug free and invested in his sobriety and spirituality. The Board also acknowledged Petitioner's education, vocational activity, and participation in self-help programs such as Narcotics Anonymous. Finally, the Board noted some concern about Petitioner's parole plans. While it was

---

[8] Rule Violation Reports, CDC Form 115, documents misconduct believed to be a violation of law or otherwise not minor in nature. See Cal. Code Regs., Tit. 15, § 3312(a)(3); In re Gray, 151 Cal. App. 4th 379, 389 (2007).

[9] The prison specifically found "The toothbrush was modified from its manufactured state with a immediate potential of being manufactured into a dangerous weapon." (Petitioner's Exhibit E).

acknowledged that he had plans outside of California following release, he would still be paroled initially to California and then transferred if approved. The Board noted that his parole plans for California had to be solidified before he would be granted parole. The Board then found Plaintiff's positive aspects did not outweigh the facts supporting a finding of unsuitability.

The undersigned finds that, contrary to Petitioner's argument, the Board relied on factors beyond the commitment offense. While the circumstances of the crime were discussed and relied upon, the Board also found the denial of parole to be supported by Petitioner's behavior in prison, specifically his latest 115, concerns about Petitioner's ability to maintain his sobriety outside the structured environment, and his limited parole plans for California. These reasons bear some indicia of reliability.

In addition, the Superior Court of California, County of Los Angeles, decision that "some evidence" supported the Board's finding of unsuitability was neither contrary to nor an unreasonable application of clearly established United States Supreme Court law. (See Answer, Doc. 24, Exhibit 5). The State Court found the Board's decision was supported by Petitioner's commitment offense and institutional misconduct. Specifically, the State Court indicated there was "some evidence" that the motive (killing for drugs) was very trivial, and Petitioner's methods (shooting the victim for money and drugs, muffling the shots with a pillow, and secreting the body) provided "some evidence" that the crime was carried out in a calculated manner. The state court further specified that the Board's decision was supported by Petitioner's institutional misconduct, referencing his three 115 disciplinary violations and specifically the 2002 possession of dangerous contraband. This decision was neither contrary to nor an unreasonable application of clearly established United States Supreme Court law. There was "some evidence" before the Board which could indicate Petitioner's release would be an unreasonable risk to public safety.

///

///

B.  **Breach of Plea Bargain**

In his second petition, Petitioner claims the State of California has breached its plea agreement and is requesting the court to order the State to specifically perform its part of the contract (and grant him parole) or allow him to withdraw his plea.

The state court rejected Petitioner's plea agreement argument. The court stated that Petitioner

> does not argue that anyone promised he would only serve the minimum term or that the District Attorney's office agreed not to oppose parole. Petitioner is serving an indeterminate term with a maximum of *life*. As such, he has no vested right to have his sentence fixed at the term first prescribed by the Board or any other period less than the maximum sentence provided by statute.

(Answer, Doc. 24, Exhibit 5).

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). "[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand." Marbry v. Johnson, 467 U.S. 504, 509 (1984). Plea agreements are contractual in nature and are subject to contract law standards of interpretation. See Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003). The party asserting the breach bears the burden of proving the underlying facts establishing a breach. See United States v. Laday, 56 F.3d 24, 26 (5th Cir.1995); United States v. Packwood, 848 F.2d 1009, 1011 (9th Cir. 1988). In determining whether a plea agreement has been breached, courts consider what was "reasonably understood" by a defendant when he "entered his plea of guilty." Gunn v. Ignacio, 263 F.3d 965, 970 (9th Cir. 2001); see also United States v. De La Fuente, 8 F.3d 1333, 1337 (9th Cir. 1993) ("In construing [a plea] agreement, the court must determine what the defendant reasonably understood to be the terms of the agreement when he pleaded guilty.). "If . . . a term of a plea agreement is not clear on its face, we look to the facts of the

15

case to determine what the parties reasonably understood to be the terms of the agreement." United States v. Clark, 218 F.3d 1092, 1095 (9th Cir.), cert. denied, 531 U.S. 1057 (2000). "[A] party's contention regarding his subjective understanding is not dispositive; rather, any dispute over the terms of the agreement must be determined by objective standards." Wheeler v. Yarbrough, 352 F. Supp. 2d 1085, 1094 (C.D. Cal. 2005); see also Buckley v. Terhune, 441 F.3d 688, 695 (9th Cir. 2006), cert. denied sub nom. Tilton v. Buckley, 550 U.S. 913 (2007) ( "Courts look to the 'objective manifestations of the parties intent[.]'" (citation omitted)). In California, a negotiated plea agreement is a form of a contract to be construed and interpreted in accordance with state contract law. See Buckley, 441 F.3d at 695. To this end, a court must look first to the plain meaning of the agreement's language. Id. If the language is ambiguous, the court must look to the "objectively reasonable" expectation of the promisee. Id. If the ambiguity remains, the language of the agreement should be interpreted most strongly against the party who caused the uncertainty to exist. Id. at 695-96.

Unlike the situation in Buckley, Petitioner in this case does not contend his agreement was for a maximum determinate sentence of 15 years. See 441 F.3d at 691-93. Instead, Petitioner acknowledges his plea agreement was for a sentence of 15 years to life. Petitioner states in his declaration: "I understood that by accepting the plea agreement, the allegations of second degree murder would be permanently stayed upon completion of the minimum term sentence of fifteen-to-life, plus two years for Penal Code Section 12022.5 and 1203.06(A)(1) enhancements." (Pl. Supp. Brief, Exhibit A). Petitioner also relies on the Judgment, which clearly sets forth the sentence of "15 years to life, plus 2 years for 12022.50 and 1203.06(a)(1). Allegations stayed to completion of 15 years to life sentence, then permanently stayed." (Pl. Supp. Brief, Exhibit B).

Since Petitioner was unable to produce the actual plea agreement signed, or the transcript of the plea acceptance hearing, this court will look at what was "objectively reasonable." The plea agreement, as set forth by Petitioner, was for a second degree murder

charge with a sentence of 15-to-life. It is objectively reasonable that Petitioner would understand that with such a sentence, he could be incarcerated for a maximum of life. He fails to provide any support for his interpretation of the plea agreement, that he would only be required to serve the minimum term of fifteen years. As the State Court discussed, Petitioner does not allege that he was promised by anyone that he would only have to serve a determinate sentence of fifteen years, or that he would not have to meet the parole eligibility requirements as decided by the Board. Therefore, that he has served beyond the minimum term of fifteen years does not render the Board's decision denying him parole to be a breach of the plea agreement.

As to Petitioner's argument that the plea agreement is invalid because he did not receive consideration for it, the undersigned does not agree. Petitioner contends the state received consideration for the agreement as it did not have to prove Petitioner's guilt. But, he claims, he did not receive any consideration for giving up his rights to a jury trial because the sentence he is required to serve, based on the continual denial of parole, is life. However, an objectively reasonable interpretation of the plea agreement is that Petitioner agreed to the second degree murder charge in order to avoid a first degree murder charge and the possibility of a sentence of life *without* the possibility of parole. The undersigned therefore finds Petitioner did receive consideration for the agreement as he retains the possibility of parole, even though he has yet to be determined suitable for release on parole.[10]

As to his other alleged violations, such as an untimely hearing, no cross-section of community, and the Board policies, Petitioner does not provide any support for his claim as to how these conditions constitute a breach of the terms of his plea agreement. Nowhere in the Judgment or his declaration is there any evidence that the plea agreement included a timeliness

---

[10] Petitioner argues that this court should order his release or at least order the Board to provide him with a fair parole hearing. The undersigned notes that Petitioner had another parole hearing in 2007, which appears to undermine his argument in that he has received the hearing he is requesting. The 2007 hearing also resulted in a denial of parole, but was limited to one year. It therefore is reasonable to assume that not only did he have another parole hearing in 2007, it is likely he has had at least one more in or around 2008.

clause, any requirement for the Board to be composed of a cross-section of the community, nor did it address any of the policies of the Board. Respondent argues these claims are not only unexhausted, but also only raise state law claims. To the extent these claims raise solely state law claims, such claims are not cognizable in federal habeas proceedings.

Parole-related decisions are not considered part of a criminal prosecution, so the "full panoply of rights" due a defendant in a criminal proceeding is not constitutionally mandated in a parole proceeding, even when a protected liberty interest exists. See Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987); Pedro v. Oregon Parole Bd., 825 F.2d 1396, 1399 (9th Cir.1987), cert. denied, 484 U.S. 1017 (1988). Due process is generally satisfied, in the context of a parole suitability hearing, where the prisoner is provided with notice of the hearing, an opportunity to be heard, and, if parole is denied, a statement of the reasons for the denial. See Jancsek, 833 F.2d at 1390 (citing Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 16 (1979)). Violation of state mandated procedures constitutes a federal due process violation only if the violation causes a fundamentally unfair result. See Estelle v. McGuire, 502 U.S. 62, 75 (1991).

Here, Petitioner is not challenging the notice he received, his opportunity to be heard, or the statement regarding the denial. Instead, he is challenging the Board policies, and the makeup of the Board. There is nothing in Petitioner's argument which could lead to a finding that the procedures of the Board resulted in a fundamentally unfair result. The Board members' backgrounds are insufficient to show actual prejudice against Petitioner, and he provided no specifics as to how they are prejudiced against him, other than the arguments previously addressed. Petitioner's argument that the policies of the Board, no-parole for murder, also violate his due process rights is similarly unsupported. Petitioner argues that due to the Board's policy, he is being denied parole based solely on his commitment offense. However, as the

///

///

undersigned has already addressed, the Board's decision was supported by more than just his commitment offense.[11]

Finally, the State court denied petitioner's claim that the Board's finding of unsuitability violates his plea agreement. The undersigned does not find that decision is contrary to nor an unreasonable application of clearly established United States Supreme Court law.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that Petitioner's petitions for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 11, 2010

_____
CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE

---

[11]  Similarly, Petitioner's ex post facto allegations are also unavailing. Petitioner is serving an indeterminate sentence of fifteen years to life. This is the sentence he agreed to in his plea agreement, and it has not changed. He continues to receive parole suitability hearings to determine whether he is ready for parole. To the extent he argues he agreed to a plea bargain where he "would be suitable for parole after serving his minimum term," that interpretation is not objectively reasonable. As addressed previously, an objectively reasonable interpretation of the plea agreement is that Petitioner will be eligible for parole after serving the minimum term, not that it was guaranteed he would be granted parole at that time.